IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

HOPKINS DAVID PLEMONS,           )
    Plaintiff,                   )
                                 )
v.                               )   Case No. 1:19-cv-55
                                 )   Judge Campbell / Frensley
CORE CIVIC, et al.,              )
    Defendants.                  )

## REPORT AND RECOMMENDATION

### I. INTRODUCTION AND BACKGROUND

Plaintiff Hopkins David Plemons filed this pro se action pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, that Defendant Brittany Crotts (Senior Correctional Officer at South Central where Mr. Plemons was previously incarcerated) violated his First Amendment rights because Ms. Crotts retaliated against him by discussing his complaints about sensitive matters in public and threatening to send him to a more restrictive housing assignment in response to his complaints. Docket No. 13, p. 1-2; *See* Docket Nos. 1, 9. Mr. Plemons alleges that: (1) Ms. Crotts humiliated Mr. Plemons in front of his peers by saying "who cares that you had been raped, you are probably a homosexual;" (2) On December 30, 2018, Mr. Plemons was placed in a cell with an inmate who had been an eyewitness to his November 2, 2017, rape, and that inmate began to harass Mr. Plemons for being an alleged homosexual; (3) Mr. Plemons was transferred from Trousdale Turner Correctional Facility to South Central Correctional Facility in February 2019 along with "several other" inmates who had witnessed his rape, those inmates began to harass Mr. Plemons for being an alleged homosexual, and Mr. Plemons brought this situation to the attention of Ms. Crotts; (4) From December 2017 to March 2019, Mr. Plemons complained about this harassment to Ms. Crotts; and (5) The harassment caused Mr. Plemons mental anguish, mental depression, and

anxiety for which he had to seek help. Docket No. 13, p. 1.

Pending before the Court is a Motion for Summary Judgment, filed by Ms. Crotts. Docket No. 19. Along with her Motion, Ms. Crotts has filed a supporting Memorandum of Law, a Statement of Undisputed Material Facts, and the Declaration of Brittany Crotts. Docket Nos. 20, 21, 22. For the reasons discussed below, the undersigned finds that Mr. Plemons failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act and failed to meet his burden of establishing the elements of a First Amendment retaliation claim. The undersigned therefore recommends that Ms. Crotts' Motion for Summary Judgment (Docket No. 19) be **GRANTED**.

Ms. Crotts argues that Mr. Plemons' claim is without merit because he cannot establish that Ms. Crotts took adverse action against him for engaging in a protected activity. Docket No. 20, p. 2. Ms. Crotts argues that Mr. Plemons cannot establish a prima facie case of retaliation because: (1) Ms. Crotts was unaware of any complaint that Mr. Plemons had allegedly made about harassment by other inmates due to an alleged sexual assault at another correctional facility; (2) Ms. Crotts never discussed any complaint, whether about an alleged sexual assault or otherwise, made by Mr. Plemons in front of the other inmates at South Central; (3) Ms. Crotts did not make any comments regarding Mr. Plemons' sexual orientation or regarding any sexual assault purportedly suffered by Mr. Plemons at another correctional facility; and (4) Ms. Crotts did not threaten Mr. Plemons, by threatening to move him to a more restrictive location at South Central or by making any other remark, at any point in time. *Id.* at 4. Ms. Crotts maintains that she performed no adverse action in this case and thus Mr. Plemons cannot prove the final two essential elements of his First Amendment retaliation claim. *Id.* at 4-5. Because Mr. Plemons cannot meet two essential elements of his claim, Ms. Crotts maintains that she is entitled to summary judgment

on Mr. Plemons' First Amendment retaliation claim. *Id.* at 5.

Mr. Plemons has not responded to Ms. Crotts' Motion or Statement of Undisputed Material Facts.

## II. UNDISPUTED FACTS[1]

Ms. Crotts was an employee of CoreCivic of Tennessee, LLC and worked at the South Central Correctional Facility ("South Central") where she held the position of Senior Correctional Officer. Docket No. 22, ¶ 1. CoreCivic, Inc. operated South Central pursuant to a contract with the Tennessee Department of Correction. *Id.*, ¶ 3. Mr. Plemons was previously a prisoner of the State of Tennessee and was incarcerated at South Central from December 29, 2017, until his release on September 17, 2019. *Id.*, ¶ 4. Ms. Crotts was not aware of any complaint that Mr. Plemons allegedly made about harassment by other inmates due to an alleged sexual assault at another correctional facility. *Id.*, ¶ 6. Ms. Crotts never discussed any complaint made by Mr. Plemons in front of the other inmates at South Central. *Id.*, ¶ 7. Ms. Crotts did not make any comments regarding the sexual orientation of Mr. Plemons or regarding any sexual assault that Mr. Plemons purportedly suffered at another correctional facility prior to his arrival at South Central. *Id.* Ms. Crotts did not threaten to send Mr. Plemons to a more restrictive location at South Central or by making any other remark. *Id.*

## III. Law and Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that

---

[1] These undisputed facts are taken from the Declaration of Brittany Crotts. Docket No. 22. As previously noted, Mr. Plemons did not respond to Ms. Crotts' Declaration.

3

time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Ms. Crotts filed the instant Motion on January 7, 2020. Docket No. 19. Mr. Plemons has failed to respond to Ms. Crotts' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant . . ..
> . . .
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Mr. Plemons has failed to respond to Ms. Crotts' Statements of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Mr. Plemons's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Ms. Crotts is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the

burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**C. 42 U.S.C. § 1983**

Section 1983 provides, in part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ..

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.

Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F. 3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F. 3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F. 3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of §1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F. 3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held

6

that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether the plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. §1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. §1997e(a) in *Freeman v. Francis*, 196 F. 3d 641 (6th Cir. 1999). In *Freeman*, the plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court dismissed his complaint for failure to exhaust administrative remedies. On appeal, the plaintiff argued that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of §1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in §1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term 'prison conditions' as used in 18 U.S.C. §3626(g)(2), which was amended as part of the same legislation as §1997e, does include claims such as excessive force because it expressly includes "effects of actions [by] government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F. 3d at 643-644 (footnote and internal citation omitted).

The U. S. Supreme Court has also held that "§1997e(a)'s exhaustion requirement applies

7

to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S. Ct. at 988, 992 (citations omitted).

### E. First Amendment Retaliation Claims

Retaliation based upon a prisoner's exercise of his constitutional rights violates the First Amendment of the United States Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

"[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake"—here, the filing of grievances or lawsuits against prison officials. *Id*. at 396, *quoting Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Whether an act is sufficiently adverse varies based on context. The context here is a prison; and prisoners "may be required to tolerate more than average citizens" before an action taken against them is considered adverse." *Id*. at 398. Even so, an act need not be egregious to be adverse. *Id*.

8

The final element addresses whether the defendant's subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct. *Id.* at 399. If the prisoner can show that the defendants' adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct. *Id.*

### F. The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Mr. Plemons' claims fall within the meaning of the term "prison conditions" as used in §1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that, prior to filing the instant action, Plaintiff did not submit any grievances with respect to any alleged harassment by other inmates at South Central regarding an alleged assault during his incarceration at Trousdale. Docket No. 22 ¶¶ 5, 6. Thus, it is further undisputed that Mr. Plemons did not exhaust his administrative remedies with regard to his claims against Ms. Crotts. *See id.* Because Mr. Plemons has failed to exhaust his administrative remedies as required by the PLRA, Ms. Crotts is entitled to a judgment as a matter of law.

Additionally, Mr. Plemons has not set forth a prima facie case of retaliation. In order to set forth a First Amendment retaliation claim, Mr. Plemons must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 387-88. Here, Mr. Plemons' prior grievances were undisputedly protected conduct. *See* Docket No. 13, p. 1. The issue, then, is whether Ms. Crotts took an adverse action against Mr. Plemons, and if so, whether Ms. Crotts was motivated, at least in part, by Mr. Plemons' protected conduct. It is undisputed that Ms. Crotts

9

did not make any comments regarding any complaint made by Mr. Plemons or Mr. Plemons' sexual preferences and that Ms. Crotts never made any threats of any kind to Mr. Plemons. Docket No. 22 ¶¶ 5-7. Mr. Plemons fails to demonstrate the final two elements of a First Amendment retaliation claim and thus fails to establish a prima facie case of a First Amendment retaliation claim.

In light of the foregoing, even if Mr. Plemons had exhausted his administrative remedies, the undisputed facts establish that Ms. Crotts did not violate Mr. Plemons' First Amendment rights; Ms. Crotts is therefore entitled to a judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds that Mr. Plemons failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act and failed to establish the elements of a First Amendment retaliation claim. The undersigned therefore recommends that Ms. Crotts' Motion for Summary Judgment (Docket No. 19) be **GRANTED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

10

Case 1:19-cv-00055 Document 23 Filed 08/20/20 Page 10 of 10 PageID #: 126